## A. ZEIGLER v. C. J. GERLACH & BROTHER.

### Decided February 4, 1910.

**1.—Consignee—Refusal to Pay Draft—Estoppel.**

When a consignee, at the time he refuses to pay a draft for the contract price of a shipment of freight, assigns one reason for the refusal, he may be estopped to assign a different reason thereafter when sued for the breach of his contract.

**2.—Consignor and Consignee—Breach of Contract—Duty of Consignor.**

When the consignee of goods breaches his contract of purchase by a refusal to accept and pay for the goods, it is the duty of the consignor to take charge of the shipment and so handle the same as to occasion the least damage to the consignee.

Appeal from the County Court of Harris County. Tried below before Hon. A. E. Ammerman.

*Byers & Byers,* for appellant.

*Baker, Botts, Parker & Garwood,* for appellees.

McMEANS, ASSOCIATE JUSTICE.—Appellees sued the appellant for the contract price of a carload of Irish potatoes alleged to have been purchased by appellant from F. R. Rose, and recovered a judgment.

Appellees alleged that on May 23, 1905, F. R. Rose, of Polk County, contracted to sell to appellant, and appellant agreed to buy, a carload of Irish potatoes at the price of fifty-seven and one-half cents per bushel, free on board the cars at Livingston; that Rose, in accordance with the contract, loaded at Livingston one car of potatoes of 550 bushels of the kind and character contracted for, and had the same shipped out over the Houston, East & West Texas Railway to destination as directed by appellant, who thereby became obligated to pay Rose the sum of $315; that Rose drew his sight draft on the appellant in favor of appellees, C. J. Gerlach & Bro., on May 25, 1905, for $314.31 with exchange; and appellees thereby became the owner and holder of said demand and entitled to receive said sum from appellant, and that appellant's indebtedness to Rose thereby became the property of appellees. They also alleged demand upon and refusal by appellant to pay. The court filed its findings of fact and conclusions of law, which were duly excepted to by appellant.

The second assignment of error is as follows: "The trial court erred in its conclusions of fact filed herein, in finding that, 'pursuant to the instructions of defendant, said car was shipped out consigned to J. A. Zeigler, at Chicago, Ills.'"

We think this assignment should be sustained. It appears from the undisputed evidence that the shipping instructions given by Zeigler to Rose, when he was notified by Rose that the car had been loaded and at the time he agreed to purchase, were to ship to Zeigler at Chicago. Rose testified that Zeigler told him how to route the car and to ship to him or his order, and to draw on him for the price of

the carload, all of which he did, making the draft payable to C. J. Gerlach & Bro.; that just what the shipping instructions were he could not remember at the time of the trial, but that he followed the instructions to the letter. The bill of lading introduced in evidence indisputably shows that the potatoes were not consigned to Zeigler, but were consigned to Rose at Chicago, Ill.—"notify J. A. Zeigler." The bill of lading was attached to the draft, but was not endorsed by Rose, and under the rules of the railway company Zeigler, without a properly endorsed bill of lading, could not have diverted or otherwise controlled the shipment while in transit, nor would the possession thereof have been surrendered to his order upon arrival of the car at Chicago.

The draft, with the unendorsed bill of lading, was not presented to Zeigler for payment until May 27, 1905, and payment was then refused upon the grounds that the car had been overloaded, and that no invoice showing the number of sacks of potatoes or weights accompanied the draft. No objection was then urged that the refusal to pay the draft was because the bill of lading had not been endorsed. It may be that, had such an objection been seasonably made, the bill of lading could have been endorsed by Rose in time for Zeigler to have diverted the shipment before it reached Chicago, or at least to have handled it after it arrived there. There is no testimony in the record to indicate that Rose would have refused to endorse the bill of lading had he been requested by Zeigler to do so, or if his attention had been called to the omission. Zeigler at once notified Rose of his refusal to pay, and Gerlach & Bro. at once took charge of the shipment and had it deflected, using Rose's name in so doing. Just what became of the potatoes—whether they were sold by Gerlach & Bro., and if so, at what price—was not developed by the testimony. Everything necessary to pass the title of the potatoes to Zeigler was done by Rose except to endorse the bill of lading; and should it be shown on another trial that Rose would have done this, had his attention been called to it, in time for Zeigler to have controlled the shipment en route and after it reached Chicago, we do not think Zeigler ought to be heard to complain of the failure to endorse the bill before or at the time it was tendered to him.

As before stated, it appears that when Rose received notice of Zeigler's refusal to take and pay for the potatoes, Gerlach & Bro., who were the owners of the draft drawn by Rose for the purchase price, diverted the shipment in Rose's name and thereafter handled the potatoes. What disposition was made of them, and, if sold, at what price, does not appear from the testimony. This, however, may be developed upon another trial. Whether the title passed to Zeigler at the time of the shipment, or whether he be now estopped to deny that it did, or whether Zeigler only breached his contract to take and pay for the same, it was, in the circumstances of this case, the duty of the seller, after notice of Zeigler's refusal to pay therefor, to handle the shipment, which was shown to be of an extremely perishable nature and then in course of transportation, to the best possible advantage so as to occasion to Zeigler the least damage, and to hold Zeigler only for

the difference in the contract price of the potatoes and the amount realized from the sale of the same.

This disposes of the assignment of error above quoted, as well as appellant's fifth proposition under the eleventh and twelfth assignments, which are sustained. All the other assignments present no reversible error or errors that will not likely occur upon another trial. For the reasons indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*